United States District Court
Southern District of Texas
**ENTERED**
July 14, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Norma Castillo, *Plaintiff*, | § § § | |
| v. | § § | Civil Action H-20-1911 |
| Andrew M. Saul, Commissioner of the Social Security Administration, *Defendant*. | § § § § § | |

# MEMORANDUM AND RECOMMENDATION

Norma Castillo appeals the Social Security Administration (SSA) Commissioner's final decision denying her application for social security benefits. (D.E. 1.) The case is before the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). (D.E. 13). Pending before the court is Plaintiff's Motion for Summary Judgment (D.E. 18) and Defendant's Motion for Summary Judgment (D.E. 19). Having considered the motions, filings, and applicable law, the court recommends that the final decision of the Commissioner be affirmed.

## 1. Procedural Posture

Castillo applied for disability insurance benefits on March 21, 2018. (Tr. 255.) Castillo claimed that she became disabled on January 1, 2014, due to obesity, anxiety, and scoliosis. (Tr. 255, 335.) She was born on June 8, 1963. (Tr. 255.)

Castillo last worked in August 2013 as a loss mitigation review specialist. (Tr. 298.) Prior to holding that job, she worked as a loan administrator. *Id.*

Castillo was insured under the Social Security Act through December 31, 2016. (Tr. 271.) To be entitled to disability insurance benefits, an applicant must be insured on the date when disability is established. *See* 20 C.F.R. § 404.131(b)(1) (2018) ("To become entitled to disability insurance benefits, [a claimant] must have disability insured status in the first full month that [she is] disabled[.]"). As applied to Castillo, she must establish that she became disabled prior to the termination of her insured status on December 31, 2016.

The SSA denied Castillo's application on August 6, 2018. (Tr. 146–49.) Castillo sought reconsideration on August 29, 2018. (Tr. 150.) The application was again denied on November 8, 2018. (Tr. 151–54.) On November 29, 2018, Castillo requested a hearing. (Tr. 170–71.)

Administrative Law Judge (ALJ) Gerald L. Meyer held a hearing on May 13, 2019, in Houston, Texas. (Tr. 106–18.) The ALJ issued a decision on June 24, 2019, finding that Castillo was not disabled. (Tr. 11–23.) The Appeals Council denied Castillo's request for review on April 22, 2020. (Tr. 1–3.)

On May 29, 2020, Castillo filed a complaint in federal court to appeal the Commissioner's final decision. (D.E. 1.) Castillo moved for summary judgment on

February 23, 2021. (D.E. 18.) Respondent filed a cross-motion for summary judgment on March 20, 2021. (D.E. 19.)

## 2. Hearing

At the hearing on May 13, 2019, the ALJ heard testimony from Castillo and a vocational expert (VE). (Tr. 106–118.) Castillo testified that back and hip pain kept her from going back to work. (Tr. 116.) She also testified that she took prescription medication for depression, muscle spasms, and pain. (Tr. 113–15.) She testified that the medication treated her symptoms and that it also put her to sleep, interfered with her ability to concentrate, and caused memory loss. (Tr. 113–16.)

Castillo testified about her work experience doing loss mitigation and loan administration.[1] Based on Castillo's description of her job duties, the VE determined that Castillo's past work was sedentary and semi-skilled. (Tr. 109–10.) The ALJ asked the VE if an individual could perform Castillo's past work if they:

> [Could] lift or carry about ten pounds occasionally. Stand and walk two or sit six hours in an eight-hour day with normal breaks. The following are never: ropes, ladders or scaffolding, crawling, exposure to extreme cold, unprotected heights or dangerous machinery. The following are occasionally: stooping, kneeling, crouching.

(Tr. 116.) The VE testified that such an individual would be able to perform work as a loss mitigation specialist and a data entry clerk, as commonly performed. (Tr. 116–

---

[1] The VE characterized Castillo's loan administration work as data entry. (Tr. 110.)

17.) Using the same hypothetical limitations, Castillo's counsel asked the VE if an individual could perform the same work if they were also limited to simple, routine instructions. (Tr. 117.) The VE testified that the hypothetical individual presented by counsel could not perform Castillo's past work and would not have transferrable skills. *Id.*

The ALJ issued a decision on June 24, 2019, finding that Castillo was not disabled. (Tr. 11–23.)

### 3. Legal Standards

The Social Security Act provides disability insurance benefits to individuals with physical and mental disabilities who have contributed to the program. *See* 42 U.S.C. § 423. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a sequential, five-step approach to determine whether the claimant is disabled. *See Schofield v. Saul*, 950 F.3d 315, 317 (5th Cir. 2020). The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step. *See Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021). A finding that the claimant is disabled or not disabled at any point in the five-step review terminates the analysis. 20 C.F.R. § 404.1520(a)(4) (2018).

4

The court's review of the ALJ's decision is limited to determining whether the decision is supported by substantial evidence and whether the evaluation of evidence was based on proper legal standards. *Keel*, 986 F.3d at 555 (quoting *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016)). "'Substantial evidence' means enough evidence 'that a reasonable mind might accept it as adequate to support a conclusion.'" *Murray v. Astrue*, 419 F. App'x 539, 541 (5th Cir. 2011) (quoting *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992)). The court may not reweigh the evidence, substitute its judgment, or decide the issues de novo. *Johnson v. Colvin*, 595 F. App'x 443, 444 (5th Cir. 2015) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)). "Even though [the court's] review is limited, 'it is imperative that [the court] scrutinize the record in its entirety to determine the reasonableness of the decision reached by the [Commissioner] and whether substantial evidence exists to support it.'" *Murray*, 419 F. App'x at 541 (quoting *Randall*, 956 F.2d at 109).

### 4. The ALJ's Decision

#### A. Step One

At step one, the ALJ must determine whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i) (2018). A person engaged in substantial gainful activity is not disabled, regardless of her medical condition, age, education, or work experience. 20 C.F.R. § 404.1520(b) (2018).

5

The ALJ correctly found that Castillo had not engaged in substantial gainful activity since the alleged disability onset date of January 1, 2014. (Tr. 17, 255.)

**B. Step Two**

At step two, the ALJ determines whether any of the claimant's impairments is severe. 20 C.F.R. § 404.1520(a)(4)(ii) (2018). An impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (emphasis omitted) (quoting *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000)). A person who does not have a severe impairment is not disabled. *Schofield*, 950 F.3d at 318 (citing 20 C.F.R. § 404.1520(c)).

The ALJ found that Castillo had the following severe impairments: osteoarthritis and obesity. (Tr. 17.) The ALJ stated that these impairments "more than minimally limit[ed] the claimant's ability to engage in work related activities[.]" *Id.*

The ALJ found that gout and anxiety were not severe impairments. (Tr. 17.) He noted that there were no medical records during the relevant time period that showed gout would limit Castillo's ability to perform basic work activities. *Id.* As for complaints of anxiety, the ALJ found limited treatment records for the relevant

6

time period but noted that Castillo was prescribed Xanax to treat her anxiety. (Tr. 17, 447.)

To determine the severity of Castillo's complaints of anxiety, the ALJ analyzed the record per the criteria for evaluating mental disorders set out in "paragraph B" of appendix 1 in the regulations. *See* 20 C.F.R. Part 404, Subpt. P, App'x 1 (2018) (Listing). To satisfy the "paragraph B" criteria, the mental impairment must result in at least one extreme or two marked limitations in these areas: 1) the ability to understand, remember, or apply information; 2) the ability to interact with others; 3) the ability to concentrate, persist, or maintain pace; and 4) the ability to adapt or manage oneself. Listing 12.00(A)(2)(b) (2018). The ALJ found that Castillo had mild limitations in all four categories based on her self-reported complaints. (Tr. 17–18.) For example, Castillo noted that she did not like to be around groups of people for long periods of time but also stated that she spent time with her family every day, went to church twice each week, shopped in stores twice each month, and saw her doctor two or three times each month. (Tr. 18, 279–81.) She also described limitations in concentrating and completing tasks. (Tr. 17–18, 281.) However, Castillo also reported she could prepare simple meals and drive. (Tr. 18, 278–79.) The ALJ determined that Castillo's anxiety caused no more than a "mild" limitation in the functional areas and thus found her anxiety to be nonsevere. (Tr. 18.)

7

Castillo argues that the ALJ erred in finding anxiety to be a nonsevere impairment because he failed to consider her statements that: her anxiety limited her ability to work; she tried to avoid groups of people; she was forgetful and needed to read things several times to remember them; she was not good at handling stress; and she was taking anxiety medication. (Tr. 276, 281–82.) The ALJ considered Castillo's complaints and notations. The ALJ explicitly discussed the remarks that Castillo cites and determined that Castillo's limitation in each functional area was "mild." (Tr. 17–18.) A finding of "mild" limitation in each functional area supports finding the mental limitation to be nonsevere. 20 C.F.R. § 1520a(d)(1) (2018); *see Garcia v. Berryhill*, 880 F.3d 700, 705 (5th Cir. 2018) (finding no error in an ALJ's step-two finding where the ALJ addressed all four functional areas, determined the limitations to be "mild," and concluded that the claimant's mental impairment was nonsevere). Castillo has not identified any evidence that the ALJ overlooked.

The court's independent review of the record shows that substantial evidence supports the ALJ's findings at step two. Moreover, other than her disagreement with the ALJ, Castillo does not point out how a different finding at step two would have altered the ALJ's overall analysis and ultimate determination of her ability to engage in substantial gainful activity. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (affirming refusal to remand where correction of ALJ's error would not have changed the outcome, and highlighting that "[t]he major policy underlying the

8

harmless error rule is to preserve judgments and avoid wast[ing] time"). Finally, where, as here, the ALJ considers the claimant's non-severe impairments in formulating the RFC and in determining whether the claimant can perform her past work, any error in determining severity at step two is harmless. *Garcia*, 880 F.3d 700, 705 n.6 (5th Cir. 2018) (adding that "any error at step two would likewise be harmless, given that the ALJ concluded [the analysis] at step four, on the basis of substantial evidence").

**C. Step Three**

At step three, the ALJ determines if any of the claimant's severe impairments meets or equals an impairment defined in the Listing. 20 C.F.R. § 404.1520(a)(4)(iii) (2018). If all the criteria of a Listing are met or equaled, the claimant is considered disabled. 20 C.F.R. § 404.1520(d) (2018).

The ALJ found that Castillo's impairments or combination of impairments did not meet or medically equal the severity of an impairment defined in the Listing. (Tr. 18–19.) The ALJ appropriately considered Listing section 1.02 (joints) and noted that there is no Listing for obesity. (Tr. 19.) He found that no combination of Castillo's impairments met a Listing at step three. *Id.*

The court's review of the record shows that substantial evidence supports the ALJ's step-three findings. Castillo does not dispute these findings.

9

### D. Residual Functional Capacity

Before reaching the final two steps, the ALJ must assess the claimant's residual functional capacity (RFC) "based on all the relevant medical and other evidence in [the] case record[.]" 20 C.F.R. § 404.1520(e) (2018); *see Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005) (citing 20 C.F.R. § 404.1545(a)(1)); SSR 96-8p, 1996 WL 374184, at *2, 3, 5 (July 2, 1996)). An RFC assessment is a determination of the most a claimant can still do despite all physical and mental limitations. *Perez*, 415 F.3d at 461–62 (citing 20 C.F.R. § 404.1545(a)(1)); SSR 96-8p, 1996 WL 374184, at *2, 4 (July 2, 1996)). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). Where the RFC assessment conflicts with a medical opinion, "the adjudicator must explain why the opinion was not adopted." *Id.*

> The ALJ determined that Castillo had the RFC:
> to perform sedentary work as defined in 20 C.F.R. [§] 404.1567(b) except the claimant can only stand or walk two hours in an eight-hour workday with normal breaks. The claimant can never crawl or climb ropes, ladders, or scaffolds. The claimant should avoid all exposure to extreme cold, unprotected heights, and moving machinery. The claimant can occasionally stoop, kneel, and crouch.

(Tr. 19.) The ALJ asserted that he considered the medical opinions, prior administrative findings, Castillo's self-reported symptoms, and "the extent to which

10

these symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" *Id.*

In evaluating the objective medical evidence, the ALJ found "extremely limited treatment records addressing the claimant's condition and any limitations from the alleged onset date through the date last insured." (Tr. 20.) He noted that medical records showed swelling in Castillo's hands and feet but that the medical findings were otherwise normal. (Tr. 20, 447, 474, 476.) Notations in the medical records show that Castillo complained of joint tenderness, swelling, and stiffness occurring one hour each morning. (Tr. 20, 474.) Medical records also show that Castillo displayed the appropriate mood and affect and normal insight and judgment and that her memory was normal. (Tr. 20, 448, 476.) The ALJ found that Castillo "was taking Xanax as needed for sleep and anxiety." (Tr. 20, 447.) He explained that "the record [did] not include any mental status examinations and [did] not reflect [that] the claimant sought any treatment from a mental health provider or therapy." (Tr. 21.)

The ALJ considered Castillo's self-reported complaints and symptoms. The ALJ stated that he considered both Castillo's hearing testimony and her written statements. (Tr. 20.) Castillo testified that pain in her hips, back, knees, feet, and right hand limited her daily activities. (Tr. 20–21, 111.) The ALJ noted that, despite this pain, Castillo could do laundry, wash dishes, prepare simple meals, go to

11

doctor's appointments, shop in stores, drive, pay bills, count change, and use a checkbook or money orders. (Tr. 21, 278–80.)

The ALJ considered the opinions of the State Agency consulting physicians. (Tr. 22.) The consulting physicians determined that there was insufficient evidence to assess function or to substantiate anxiety. (Tr. 123–25, 131–33.) The ALJ found these opinions to be irrelevant and unpersuasive. (Tr. 22.) He noted that additional evidence, submitted at the hearing level, supported limiting Castillo to the sedentary exertional level. *Id.*

The court concludes that the ALJ's RFC determination is supported by substantial evidence.

Castillo argues that the RFC should have included "her anxiety limitations and her hand impairments." (D.E. 18 at 12.) Castillo does not specify what limitations her anxiety caused. She does not cite to any medical records as evidence of anxiety. The ALJ noted that the record contained no mental health records. (Tr. 21.) As evidence of her hand impairments, Castillo directs the court to notations that Castillo reported aching pain in her hand that was aggravated by inactivity and that she suffered from joint tenderness, swelling, and stiffness one hour each morning. (Tr. 474, 476–77.) She also relies on her hearing testimony that she was being treated for arthritis affecting her right hand, had difficulty opening things due

12

to pain in her right hand, and sometimes dropped things that she was holding. (Tr. 111–12, 115.)

The medical records that Castillo cites are the same records that the ALJ explicitly discussed in his decision. The ALJ also considered Castillo's testimony and determined that it was inconsistent with her other statements that she could do laundry, wash dishes, prepare simple meals, pay bills, count change, and use a checkbook or money orders. (Tr. 21, 278–79.) Although she disagrees with the ALJ's determination, it is supported by substantial evidence. It is the role of the Commissioner to assess the claimant's RFC based on the relevant evidence. 20 C.F.R. § 404.1545(a)(1) (2018). The ALJ did not err simply because his assessment of the evidence differed from Castillo's. *See Vaught v. Astrue*, 271 F. App'x 452, 456 (5th Cir. 2008) (explaining that, if an RFC is supported by substantial evidence, mere disagreement with the determination does not constitute reversible error).

### E. Step Four

At step four, the RFC is used to determine whether the claimant can perform past relevant work. *Perez*, 415 F.3d at 462. If the claimant can perform their past work, they are not disabled. 20 C.F.R. § 404.1520(f) (2018). If the claimant cannot perform their past work, the ALJ proceeds to step five. 20 C.F.R. § 404.1520(g)(1) (2018).

At the hearing, the VE testified that Castillo's past work as a loss mitigation specialist was not in the Dictionary of Occupational Titles (DOT) but that, "based on how [Castillo] described it" and the vocational report, the job was properly classified as sedentary. (Tr. 110.) The VE testified that, although Castillo's past data entry work was performed at the medium level of exertion, the DOT description listed it as sedentary. *Id.*

The ALJ asked the VE if a hypothetical individual with the limitations ultimately adopted in the RFC could perform Castillo's past work. (Tr. 116.) Specifically, the ALJ's hypothetical question was limited to "an individual who can lift or carry about ten pounds occasionally." *Id.* The court notes that the foregoing limitation corresponds directly to the Social Security Regulations' definition of the sedentary exertion level. 20 C.F.R. § 404.1567(a)(2018). Thus, while the hypothetical question did not include the word sedentary, the ALJ was inquiring about sedentary work. The VE testified that the hypothetical individual could perform Castillo's past work as a loss mitigation specialist. (Tr. 116-17.) The VE further testified that the hypothetical individual could perform Castillo's past work as a data entry clerk, with the caveat that such work is commonly performed at the sedentary level, while Castillo performed it at the medium exertion level. (Tr. 116– 17.)

The ALJ adopted the VE's testimony, which he found consistent with the DOT and the Selected Characteristics of Occupations. (Tr. 22.) Based on his acceptance of the VE's testimony, the ALJ determined that Castillo could perform her past relevant work as a loss mitigation specialist and a data entry clerk. *Id.* In his decision, he reiterated the VE's testimony that the hypothetical individual could only perform data entry work as it was "generally performed in the national economy" and that the exertion and skill level of a loss mitigation specialist was based on the VE's professional experience. *Id.*

Castillo points out in her summary judgment motion that, in his decision, the ALJ categorized Castillo's past work as a loss mitigation specialist as requiring "light exertion, and is skilled with an SVP[2] of 5." (Tr. 22.) This typographical error, while unfortunate, does not undermine the ALJ's decision. The court's task is not to find typos, but to determine whether the ALJ's decision is supported by substantial evidence. It is. The ALJ's RFC limits Castillo to sedentary work, and her past work can be performed at the sedentary level. Thus, there is no doubt in the court's mind that Castillo can return to her past work. The ALJ's decision is supported by substantial evidence.

---

[2] The SVP is the "specific vocational preparation time [] for each described occupation." SSR 00-4p, 2000, WL 1898704, at *3 (Dec. 4, 2000).

15

Castillo also argues that the hypothetical posed to the VE was defective because it did not incorporate limitations related to problems with her hands and anxiety. "An ALJ's hypothetical is 'defective unless[:] (1) it incorporates reasonably all disabilities of the claimant recognized by the ALJ, and (2) the claimant or [their] representative is afforded the opportunity to correct deficiencies in the hypothetical.'" *Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016) (first alteration in original) (quoting *Bellow v. Chater*, 66 F.3d 323, 1995 WL 534955, at *1 (5th Cir. Aug. 16, 1995)). The burden is on the claimant to demonstrate that she cannot perform her past relevant work. *Brown v. Astrue*, 344 F. App'x 16, 19 (5th Cir. 2009).

The ALJ asked the VE whether a hypothetical individual with all the limitations ultimately adopted by the ALJ in the RFC could perform Castillo's past work as loss mitigation specialist or data entry clerk. (Tr. 116.) With the caveat mentioned above, the VE testified that she could. (Tr. 116–17.) The ALJ's hypothetical need only incorporate limitations "recognized by the ALJ[.]" *Hardman*, 820 F.3d at 148. As discussed, substantial evidence supports the limitations that the ALJ recognized and incorporated into the RFC. Castillo's attorney was given the opportunity to correct deficiencies in the hypothetical question. (Tr. 117.) The hypothetical posed to the VE was not defective.

16

Substantial evidence supports the ALJ's step-four determination, and he followed the correct legal rules in reaching it. Because the ALJ found that Castillo was not disabled at step four, his analysis stopped there and did not reach step five. *See Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001) ("A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis.").

### 5. Conclusion

The court's review of the administrative record reveals that substantial evidence supports the ALJ's findings at each sequential step. The ALJ's decision denying Social Security benefits is supported by substantial evidence and is consistent with the law. There is no genuine issue of material fact, and summary judgment is appropriate. Fed. R. Civ. P. 56(a), (c). Accordingly, the court recommends that Defendant's motion for summary judgment be GRANTED and that Plaintiff's motion for summary judgment be DENIED.

The parties have fourteen days from service of this memorandum and recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(c); Fed. R.

Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas, on July 14, 2021.

_____
Peter Bray
United States Magistrate Judge